## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**Case No. 20 – 11122**

NOREEN BECHADE,
    *Plaintiff,*

v.

GOVERNOR CHARLES BAKER, in his official capacity
as the Governor of the Commonwealth of Massachusetts,

&

MONICA BHAREL, MD, MPH, in her official capacity
as the Commissioner of the Massachusetts Department of
Public Health,

&

BILL McKINNEY, in his official capacity as the Director
of the Massachusetts Department of Labor Standards,
    *Defendants.*

## VERIFIED COMPLAINT FOR INJUNCTIVE & DECLARATORY RELIEF

## INTRODUCTION

1.   During the months of March, April, and May of 2020, Americans lost nearly every

single one of their so-called "Unalienable Rights" as found in the Bill of Rights and

the 14th Amendment. This occurred due to the Panic surrounding a new Corona

Virus.

The Panic caused government officials across the United States to implement so-

called precautionary measures, which violated: the First Amendment, including

Freedom of Religion, Freedom of Speech, and Freedom of Assembly, as the

government ordered churches to close; the Second Amendment, as many states

deemed gun stores to be "nonessential businesses"; the Fourth Amendment, with proposed "tracking" that will "benefit" those that the government are trying to "protect" from COVID; the Fifth & Fourteenth Amendments, with the government taking "life, liberty, and property" from people who are trying to provide for themselves and their families; the Sixth and Seventh Amendments, with criminal and civil jury trials being, essentially, indefinitely postponed. This list is far from exhaustive.

During the Panic, the people hardly stopped to realize that the Pandemic that they got was not the pandemic that the media and the government told them they were going to get because, while there were many asymptomatic cases, there were relatively few fatalities as compared to other common causes of death.

In spite of all of these legal violations—some of which the government stole from the people, some of which the people ignorantly threw away—this Civil Rights Lawsuit that comes before the United States District Court for the District of Massachusetts is to respectfully pray that this Court strikes down just one commonality in a set of unconstitutional Executive Orders—the colloquially-titled "Mask Mandates" (i.e., Executive Orders Nos. 31, 33, and 37).

## PARTIES

2. Noreen Bechade (the "Plaintiff") is an individual currently residing in Plymouth, Massachusetts. She is also the owner and operator of Healthy Vibes Nutrition, LLC, where she has a mailing address at: 21 Court Street, Plymouth, Massachusetts 02360. She is currently a healthy individual, and she currently employs several people.

3. Charles Baker (the "Governor") is the Governor of the Commonwealth of Massachusetts, with an office at: Massachusetts State House, 24 Beacon Street, Office of the Governor, Room 280, Boston, Massachusetts 02133. The Plaintiff is suing the Governor in his official governmental capacity because he issued at least three Executive Orders that the Plaintiff believes to be unconstitutional.

4. Monica Bharel, MD, MPH (the "Commissioner") is the Commissioner of the Massachusetts Department of Public Health, with an office at: 250 Washington Street, Boston, Massachusetts 02108. The Plaintiff is suing the Commissioner in her official governmental capacity because the Governor gave her the authority to enforce at least three Executive Orders that the Plaintiff believes to be unconstitutional.

5. Bill McKinney (the "Director") is the Director of the Massachusetts Department of Labor Standards, with an office at: 19 Staniford Street, 2nd Floor, Boston, Massachusetts 02114. The Plaintiff is suing the Director in his official governmental capacity because the Governor gave him the authority to enforce at least two Executive Orders that the Plaintiff believes to be unconstitutional.

## JURISDICTION & VENUE

6. This case raises claims under the Fifth & Fourteenth Amendments of the U.S. Constitution, and 42 U.S.C §1983. This Court has subject-matter jurisdiction under 28 U.S.C. §1331 & §1343.

7. This Court has supplemental jurisdiction over the claims asserted under the Massachusetts Declaration of Rights, Massachusetts statutes, and regulations pursuant to 28 U.S.C. §1367.

8. Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. 1391(b)(1) & (2) because it is a District in which the Defendants' hold their main offices, exercise their authority in their official capacities, and have enforced, or have threatened to enforce, the Mask Mandates that are the subject of this lawsuit.

## ALLEGATIONS

9. The Corona Virus at issue in this Lawsuit is also known as: (1) COVID-19, meaning "Corona Virus Disease 2019"; (2) "SARS-CoV-2," which is the scientific name of the new strain of the Virus; and (3) the "Novel Corona Virus," as there are numerous Corona Viruses, and have been for decades. These strains of viruses have been named "corona" viruses because each virion is surround by a "corona," meaning crown or halo, which can be observed through microscopes.[1] Generally, this Complaint will refer to this Virus simply as: "COVID."

10. According to the Center for Disease Control and Prevention (the "CDC), common symptoms of COVID include: fever or chills, cough, shortness of breath, fatigue, and other flu-like symptoms.[2]

11. While the origins of COVID are still being debated, on January 21, 2020, the CDC confirmed the first case of COVID in the United States, in the state of Washington, where a patient had recently returned from Wuhan, China.[3]

---

[1] Yale Medicine, Our New COVID-19 Vocabulary—What Does It All Mean? (April 7, 2020) https://www.yalemedicine.org/stories/covid-19-glossary/#:~:text=COVID%2D19%20means%20Coronavirus%20Disease%202019.
[2] CDC, COVID Symptoms: https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html
[3] CDC Newsroom, Press Release (January 21, 2020): https://www.cdc.gov/media/releases/2020/p0121-novel-coronavirus-travel-case.html

12. By this time, the evidence was already clear that there were two classes of people who were particularly at-risk for death as a result of COVID: (1) the elderly; and (2) folks with underlying health problems.[4]

13. By the time COVID was found to have made its way to the United States, people had already been exposed, and a pandemic was already underway.

---

14. On February 27, 2020, the CDC tweeted: "CDC does not currently recommend the use of facemasks to help prevent novel #coronavirus. Take everyday preventative actions, like staying home when you are sick and washing hands with soap and water, to help slow the spread of respiratory illness."[5]

15. On February 29, 2020, the United States Surgeon General tweeted: "Seriously people—STOP BUYING MASKS! They are NOT effective in preventing the general public from catching #Coronavirus, but if healthcare providers can't get them to care for sick patients, it puts them and our communities at risk!"[6]

16. On March 8, 2020, in a 60 Minutes interview, an interviewer interviewed Dr. Anthony Fauci, director of the National Institute of Allergy and Infectious Diseases, asking specifically about masks as a preventative of COVID:

  a.  Fauci: "The masks are important for someone who's infected to prevent them from infecting someone else. Now, when you see people—and look at the films in China and South Korea, whatever, and everybody's wearing a

---

[4] CDC, At Risk for Severe Illness: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html
[5] CDC, Twitter @CDCgov: https://twitter.com/surgeon_general/status/1233725785283932160 (last checked on June 10, 2020)
[6] U.S. Surgeon General, Twitter @Surgeon_General: https://twitter.com/surgeon_general/status/1233725785283932160 (last checked on June 10, 2020)

mask—right now in the United States, people should not be walking around
with masks."

b.  Interviewer: "You're sure of it? Because people are listening really closely to
this."

c.  Fauci: "Right now, people should not be walking around with a mask—there's
no reason to be walking around with a mask. When you're in the middle of an
outbreak, wearing a mask might make people "feel" [air quotes] a little bit
better, and it might even block a droplet. But it is not providing the perfect
protection that people *think* that it is. And often, there are unintended
consequences. People keep fiddling with the mask, and they keep touching
their face."

d.  Interviewer: "Can you get some schmutz sort of staying inside there?"

e.  Fauci: "Of course. Of course. But when you think "masks," you should think
of healthcare providers needing them, and people who are ill. The people who,
when you look at the films of foreign countries and you see 85% of the people
wearing masks, that's fine. That's fine. I'm not against it. If you wanna do it.
That's fine."

f.  Interviewer: "But it can lead to a shortage of masks."

g.  Fauci: "Exactly. That's the point. It could lead to a shortage of masks for
people who really need it."[7]

---

---

[7] 60 Minutes, Dr. Anthony Fauci talks with Dr. Jon LaPook about Covid-19 (March 8, 2020):
https://www.youtube.com/watch?v=PRa6t_e7dgI

17. On March 10, 2020, the Governor issued Executive Order No. 591: "Declaration of a State of Emergency to Respond to COVID-19."[8]

18. In this Executive Order, the Governor cited the World Health Organization's (the "WHO") designation of the 2019 novel Coronavirus outbreak as "a Public Health Emergency of International Concern."

19. On March 13, 2020, President Donald Trump declared a "National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak."[9]

20. On March 16, 2020, the New York Times reported that: "2.2 million people in the United States could die," as a direct result of COVID.[10]

21. On March 31, 2020, *after recommending mitigating measures such as social distancing, hand washing, lockdowns, and masking*, President Donald Trump and Dr. Anthony Fauci publicly predicted that between 100,000 and 240,000 Americans would die *in the following two weeks* (by April 14), as a direct result of COVID.[11]

22. At or around this time, the Governor issued a series of orders that essentially shut down the Massachusetts economy.

---

23. Fortunately, while experts were working hard to try to learn how to prevent COVID fatalities, media and government fatality predictions were proving themselves to be far from accurate, and COVID fatalities remained far lower than initially thought.

[8] The Governor's Executive Order (No. 591) (March 10, 2020): https://www.mass.gov/executive-orders/no-591-declaration-of-a-state-of-emergency-to-respond-to-covid-19
[9] The President's Executive Order (March 13, 2020): https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/
[10] The New York Times, White House Takes New Line After Dire Report on Death Toll, by Sheri Fink (March 16, 2020): https://www.nytimes.com/2020/03/16/us/coronavirus-fatality-rate-white-house.html
[11] CNBC, White House Predicts 100,000 to 240,000 will die in US from Coronavirus, by Berkeley Lovelace, Jr. & Dan Mangan (March 31, 2020): https://www.cnbc.com/2020/03/31/trump-says-the-coronavirus-surge-is-coming-its-going-to-be-a-very-very-painful-two-weeks.html

24. However, in spite of the good news concerning the relatively low fatalities, the Panic persisted, and governments continued to implement measures.

25. On May 1, 2020, the Governor issued the first "Mask Mandate" (i.e., Executive Order No. 31)—effective May 6, 2020—requiring, essentially, individuals to wear masks or face coverings in public places when "social distancing" is impossible—including outdoors.[12]

26. Within the Mask Mandate, the Governor mentions, but does not cite, an opinion from the CDC as to why face coverings in particular might prevent the spread of COVID— a contradiction from earlier opinions from the CDC, as well as a contradiction from earlier opinions from Fauci.

27. Violations of the Mask Mandate carry a penalty of $300 per violation.

28. The Mask Mandate states that it "shall remain in effect until rescinded or until the emergency is terminated," but gives no specific date.

29. On May 1, 2020, the Governor said that it was "common sense" for people to wear masks in public; and that: "[F]ace coverings 'should be' the norm....This is going to be basically a way of life....No ifs, no ands, no buts, no doubts. If you can't [socially distance] inside or outside, you're going to be expected to wear a face covering or a mask."[13]

---

30. On May 12, a PBS interviewer interviewed Dr. Fauci, but, by this time, Dr. Fauci had changed his opinion on masks:

---

[12] "Mask Mandate" (Executive Order No. 31) (May 1, 2020): https://www.mass.gov/doc/may-1-2020-masks-and-face-coverings/download
[13] The Boston Globe, It's "Common Sense" for Us to Wear Masks in Public, by Matt Stout, et al. (May 1, 2020): https://www.bostonglobe.com/2020/05/01/nation/coronavirus-boston-massachusetts-may-1/

a. Fauci: "Some sort of mask-like facial covering, I think for the time being, should be a very regular part of how we prevent the spread of infection. And in fact, the more and more as you go outside…you can see many people out there with masks on. Which gives me some degree of comfort, when people are taking this very seriously."[14]

31. However, in one scientific study published May 17, 2020, an asymptomatic COVID patient was found to have had contact with 455 people—none of whom contracted COVID themselves—showing that asymptomatic COVID carriers are extremely unlikely to be contagious, even in a "relatively dense space," which means that it would be unnecessary and unreasonable for every healthy person to be forced to wear a mask—as ordered by the Mask Mandates.[15]

32. On May 18, 2020, the Governor issued another Executive Order, this one being "Phase-One" of his "Four-Phase Plan" to reopen the Massachusetts economy (i.e., Executive Order No. 33).[16]

33. Therein, it was required that all employers force all employees to wear face coverings or masks.

34. Violation of this Order carry a penalty of $300 per violation.

35. On May 18, 2020, the Governor publicly announced, in relevant part: "Cover your nose and mouth when you can't distance yourself. The science is clear. Simple face coverings prevent the spread of this disease incredibly effectively."[17]

---

[14] PBS NewsHour, Dr. Anthony Fauci Recommends Wearing Masks "For the Time Being" (May 12, 2020): https://www.youtube.com/watch?v=C_FWRVURT2s
[15] Ming Gao, et al., *A Study on Infectivity of Asymptomatic SARS-CoV-2 Carriers*, Respiratory Medicine (May 13, 2020): https://www.resmedjournal.com/article/S0954-6111(20)30166-9/pdf
[16] The Governor's "Phase-One" Order (Executive Order No. 33) (May 18, 2020): https://www.mass.gov/doc/may-18-2020-re-opening-massachusetts-order/download

36. However, according to Reuters, by May 31, 2020, it had already been discovered that: "The new coronavirus is losing its potency and has become much less lethal."[18]

37. In the same article, Alberto Zangrillo, the head of the San Raffaele Hospital in Milan, stated: "The strength the virus had two months ago is not the same strength it has today….It is clear that today the COVID-19 disease is different."

38. On June 8, 2020, the World Health Organization announced: "From the data we have, it still seems to be rare that an asymptomatic person actually transmits onward to a secondary individual."[19]

39. In spite of the evidence, on June 8, 2020, the Governor issued another Executive Order, this one being "Phase-Two" of his "Four-Phase Plan" to reopen the Massachusetts economy (i.e., Executive Order No. 37), and there was no rescinding of any of the rules on masks or face coverings—neither for the general public nor for employees.[20]

---

40. As of the filing of this Complaint, according to the U.S. Census Bureau, Massachusetts has a population of nearly 7,000,000.[21]

41. As of the filing of this Complaint, there are alleged to have been approximately 7,000 fatalities as a result of COVID.[22]

---

[17] MassGovernor, COVID-19 Update: Reopening Massachusetts Report (May 18, 2020) (@5:38): https://www.youtube.com/watch?v=VrnY_dON330
[18] Reuters, New Coronavirus Losing Potency, by Crispian Balmer (May 31, 2020): https://www.reuters.com/article/us-health-coronavirus-italy-virus/new-coronavirus-losing-potency-top-italian-doctor-says-idUSKBN2370OQ
[19] CNBC, Asymptomatic Spread of Coronavirus is "very rare," WHO says, by William Feuer & Noah Higgins-Dunn (June 8, 2020): https://www.cnbc.com/2020/06/08/asymptomatic-coronavirus-patients-arent-spreading-new-infections-who-says.html
[20] The Governor's "Phase-Two" Order (i.e., Executive Order No. 37): https://www.mass.gov/doc/june-6-2020-phase-ii-reopening/download
[21] Unites States Census Bureau, MA Population: https://www.census.gov/quickfacts/fact/table/MA

42. 7,000 is approximately .1% of 7,000,000 (i.e., *point one percent*).

43. Furthermore, more than 4,000 of those 7,000 fatalities occurred within nursing homes.[23]

44. In contrast, according to the CDC, there were nearly 3,000,000 deaths in the United States in 2017: (1) Nearly 650,000 people died from heart disease; (2) Nearly 600,000 people died from cancer; (3) Nearly 170,000 people died in accidents; (4) Nearly 56,000 people died from influenza & pneumonia, etc.[24]

45. Additionally, COVID fatalities are possibly inflated, as conceded by the CDC, as deaths from flu-like symptoms may be falsely attributed to COVID.[25]

46. If the Defendants are permitted to continue to implement sweeping measures for COVID, then the precedent will be that the Defendants are permitted to unilaterally implement sweeping measures for nearly any other cause of death—whether viruses, car crashes, heart disease (including diet & exercise), or vaping.

47. While the Governor might have the power to implement and enforce executive orders to protect the two classes of people who are actually at high-risk for death as a result of COVID, the Governor does not have the power to implement or enforce executive orders to "protect" those who are *not* at high-risk for death as a result of COVID.

48. If the so-called experts are permitted to contradict each other, as well as contradict themselves, then there is no lesser good in permitting the Plaintiff to weigh the evidence and make medical choices for herself.

---

[22] The New York Times, Coronavirus Map & Case Count:
https://www.nytimes.com/interactive/2020/us/massachusetts-coronavirus-cases.html
[23] Boston.com, Impact on Massachusetts Nursing Homes an "Enormous Tragedy," by Nik DeCosta-Klipa
(May 29, 2020): https://www.boston.com/news/coronavirus/2020/05/29/massachusetts-nursing-home-data
[24] CDC, Deaths & Mortality: https://www.cdc.gov/nchs/fastats/deaths.htm
[25] CDC, Excess Deaths Associated with COVID-19 (Updated June 10, 2020):
https://www.cdc.gov/nchs/nvss/vsrr/covid19/excess_deaths.htm

49. Also, the Mask Mandates force people to cover a large part of their faces, restricting freedom of speech and expression, as facial expressions are a large part of nonverbal communication.[26]

50. Now, the Plaintiff is seeking injunctive and declaratory relief on the grounds that the Defendants are: (1) Violating Massachusetts' Police Power; (2) Violating Constitutional Rights to Privacy; (3) Violating Constitutional Rights to Personal Medical Decisions; (4) Violating the First Amendment of the U.S. Constitution; and (5) Violating the Massachusetts Declaration of Rights.

## COUNT I
### Violation of Massachusetts' Police Power

51. The Plaintiff incorporates by reference the paragraphs set forth above, and alleges the same as if originally set forth herein.

52. The 10th Amendment of the Constitution provides that powers not delegated to the United States by the Constitution, and not prohibited by it to the states, are reserved to the state or to the people.

53. The Fourteenth Amendment of the United States Constitution states that no State shall "deprive any person of life, liberty, or property, without due process of law."

54. The Defendants state their authority to enact or enforce the measures in the Mask Mandates (collectively, Executive Order Nos. 31, 33, and 37) comes from: (1) Chapter 639 of the Acts of 1950; and (2) M.G.L. ch. 17, §2A.

55. §5 of Chapter 639 of the Acts of 1950 holds that the Governor has the power to "Proclaim a State of Emergency," and thereby have the authority to implement

---

[26] *What Every Body Is Saying: An Ex-FBI Agent's Guide to Speed-Reading People*, by Joe Navarro, et al., Harper Collins (2008) (see ch. Seven: The Mind's Canvas).

remedial measures, "[b]ecause of the existing possibility of the occurrence of
disasters of *unprecedented size and destructiveness* resulting from enemy attack,
sabotage or other hostile action," in order to protect the Commonwealth. [Italics
mine.]

56. However, as presented by the Plaintiff, COVID—albeit a real danger that is
sometimes deadly—is hardly a disaster of *unprecedented size and destructiveness*, as
CDC fatality rates show that heart disease alone accounted for approximately 650,000
U.S. deaths in 2017.

57. As of the filing of this Complaint, fatality rates show that COVID has accounted for
approximately 115,000 U.S. deaths in 2020.

58. Thus, rates of *precedented* size are often more deadly than COVID.

59. Moreover, as presented by the Plaintiff, the requirement to wear facial coverings is
unnecessary or ineffective in preventing the spread of COVID; or, in the alternative,
the government will fail to show that facial coverings are necessary or effective in
preventing the spread of COVID.

60. The Governor stating that it is "common sense" to wear face coverings, or that "the
science is clear" as to facial coverings being reasonably necessary to preventing the
spread of COVID, is constitutionally insufficient.

61. Because of the studies showing that COVID is losing its potency, because COVID is
not a disaster of unprecedented size, because of the studies showing that masks are,
overall, ineffective at preventing the spread of COVID, or because the science is
inconclusive on the matter, the Defendants will fail at satisfying their burden of
showing how Mask Mandates are legal.

62. Pursuant to 42 U.S.C., §§1983 & 1988, the Plaintiff is entitled to declaratory relief and permanent injunctive relief invalidating or restraining enforcement of the Mask Mandates.

63. The Plaintiff found it necessary to engage the services of private counsel to vindicate her rights under the law, and the Plaintiff is therefore entitled to an award of her attorney-fees pursuant to 42 U.S.C., §1988.


## COUNT II
### Violation of the Constitutional Right to Privacy

64. The Plaintiff incorporates by reference the paragraphs set forth above, and alleges the same as if originally set forth herein.

65. The Fourteenth Amendment of the United States Constitution states that no state shall "deprive any person of life, liberty or property, without due process of law."

66. As above-cited, the Defendants' Mask Mandates force individuals, including employees, to wear masks.

67. As above-cited, the Defendants' Mask Mandates renders individuals, including employees, subject to punishments for each violation.

68. There exist a number of "penumbras" in the Constitution that create zones of privacy. Griswold v. Connecticut, 381 U.S. 479, 484, (1965).

69. "[G]overnmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." Id. at 485; citing NAACP v. Alabama, 377 U.S. 288, 307 (1964).

70. The Mask Mandates created and enforced by the Defendants are sweeping and unnecessarily broad as they are not based on science or data that show that facial coverings are effective at stopping the spread of COVID; or, in the alternative, the Defendants will fail to successfully assert that the "science is clear," or even weighted sufficiently in their favor to render Mask Mandates necessary.

71. As such, the Mask Mandates are overbroad and unnecessary, and invade the Plaintiff's constitutional right to privacy by forcing her to wear a facial covering, and by forcing her to force her employees to wear them.

72. Furthermore, the Order violates the Plaintiff's Fourteenth Amendment Rights by depriving her of her right to privacy without Due Process.

73. Pursuant to 42 U.S.C., §§1983 & 1988, the Plaintiff is entitled to declaratory relief and permanent injunctive relief invalidating or restraining enforcement of the Mask Mandates.

74. The Plaintiff found it necessary to engage the services of private counsel to vindicate her rights under the law, and the Plaintiff is therefore entitled to an award of her attorney-fees pursuant to 42 U.S.C., §1988.

## COUNT III
### Violation of Constitutional Right to Personal Medical Decisions

75. The Plaintiff incorporates by reference the paragraphs set forth above, and alleges the same as if originally set forth herein.

76. The Defendants' Mask Mandates force individuals to wear facial covering as either a way to protect the wearer or those around them—the distinction is unclear.

77. "The right to one's person may be said to be a right of complete immunity; to be let alone." <u>Union Pac. R. Co. v. Botsford</u>, 141 U.S. 250, 251 (1891).

78. Competent people possess the right to decline unwanted medical treatment if they so choose. <u>Cruzan by Cruzan v. Dir., Missouri Dep't of Health</u>, 497 U.S. 261, 278 (1990).

79. The Order forces healthy individuals to make medical choices by requiring the wearing of a facial covering when in public.

80. Forcing the Plaintiff to wear a facial covering in public or in her business violates her rights under the Fourteenth Amendment by depriving her of the liberty to make medical decisions for herself.

81. Pursuant to 42 U.S.C., §§1983 & 1988, the Plaintiff is entitled to declaratory relief and permanent injunctive relief invalidating or restraining enforcement of the Mask Mandates.

82. The Plaintiff found it necessary to engage the services of private counsel to vindicate her rights under the law, and the Plaintiff is therefore entitled to an award of her attorney-fees pursuant to 42 U.S.C., §1988.

## COUNT IV
### Violation of the First Amendment & the Freedom of Speech or Expression

83. The Plaintiff incorporates by reference the paragraphs set forth above, and alleges the same as if originally set forth herein.

84. The Defendants' Mask Mandates force individuals to cover their faces.

85. The First Amendment reads, in relevant part: "Congress shall make no law...abridging the freedom of speech."

86. Facial expression is a form of speech, which the Defendants are suppressing by the issuance and enforcement of the Mask Mandates.

87. First Amendment Rights are subject to the highest standards of review, where the state laws must be "narrowly-tailored" to serve a "compelling state interest."

88. "Broad prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms." Riley v. National Federation of Blind, 487 U.S. 781 (1988); citing NAACP v. Button, 371 U.S. 415, 438 (1963).

89. Here, as above-cited, there are no "compelling state interests," as defined by the law.

90. Furthermore, the Mask Mandates, for purposes of slowing the spread of COVID, are unconstitutional, as "more benign and narrowly tailored options are available." Riley at 801.

91. Pursuant to 42 U.S.C., §§1983 & 1988, the Plaintiff is entitled to declaratory relief and permanent injunctive relief invalidating or restraining enforcement of the Mask Mandates.

92. The Plaintiff found it necessary to engage the services of private counsel to vindicate her rights under the law, and the Plaintiff is therefore entitled to an award of her attorney-fees pursuant to 42 U.S.C., §1988.


## COUNT V
### Violation of the Massachusetts' Declaration of Rights

93. The Plaintiff incorporates by reference the paragraphs set forth above, and alleges the same as if originally set forth herein.

94. Article 1 of the Massachusetts Declaration of Rights, written by the great John Adams, states: "All men are born free and equal, and have certain natural, essential, and unalienable rights; among which may be reckoned the right of enjoying and defending their lives and liberties."

95. The Mask Mandates violate individuals' unalienable rights, and unlawfully violate their "right of enjoying and defending their lives and liberties."

96. Pursuant to 42 U.S.C., §§1983 & 1988, the Plaintiff is entitled to declaratory relief and permanent injunctive relief invalidating or restraining enforcement of the Mask Mandates.

97. The Plaintiff found it necessary to engage the services of private counsel to vindicate her rights under the law, and the Plaintiff is therefore entitled to an award of her attorney-fees pursuant to 42 U.S.C., §1988.


**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff demands that an Injunction be entered as against the Defendants in order to render any and all so-called Mask Mandates relating to COVID, whether cited or uncited in this Complaint, unconstitutional on the above-mentioned claims, applicable to such parties, and order that the following damages be awarded:

a. Attorney's fees;

b. Court costs;

c. Any such other relief as this Honorable Court might deem appropriate and equitable.

The Plaintiff,
By Her Attorney:

Dated: June 12, 2020

Daniel Casieri, BBO No. 697693
The Law Office of Daniel Casieri, Esq.
19 Court Street, Unit 3D
Plymouth, MA 02360
Telephone: 508.400.0774
Email: danielcasierilaw@gmail.com

## VERIFICATION

I, Noreen Bechade, owner of Healthy Vibes, LLC, and Plaintiff to this Complaint, do hereby affirm, under the penalties of perjury, that the allegations in this Verified Complaint are accurate.

Dated: June 12, 2020

Noreen Bechade, Plaintiff

19